# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-1772V
Filed: January 29, 2024

|  |  |
|---|---|
| KIMBERLY TRUETT,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Special Master Horner |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.*
*Parisa Tabassian, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

  On November 13, 2017, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.* ("Vaccine Act"). (ECF No. 1.) Petitioner alleged that she suffered "injuries, including shoulder pain and injury" resulting from an influenza ("flu") vaccine she received on October 31, 2016. (*Id.*) On November 1, 2022, I issued a Decision, concluding that petitioner was not entitled to compensation. (ECF No. 72.) Thereafter, on December 2, 2022, judgment entered dismissing the case. (ECF No. 74.)

  On May 31, 2023, petitioner filed a motion seeking an award of attorneys' fees and costs. (ECF No. 75.) Petitioner seeks $97,162.29, including $74,361.50 for attorneys' fees and $22,800.79 for litigation costs. (*Id.*) The requested costs include $4,750.00 for petitioner's report by Dr. Clifford W. Colwell, Jr.; $13,000.00 for

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

1

petitioner's report by Dr. Uma Srikumaran; $3,450.00 for petitioner's report by Dr. Syed Ahmend; and $1,600.79 for expenses largely associated with filing the petition and collecting medical records.  (ECF No. 75-2.)  Although petitioner was not found entitled to compensation, respondent agrees that the statutory requirements for an award of attorneys' fees and costs has been met in this case.  (ECF No. 76, p. 2 (citing 42 U.S.C. §300aa-15(e)).  Regarding the amount of that award, respondent requests that the special master exercise his discretion.[2]  (ECF No. 76, p. 3; ECF No. 125, p. 4.)

As respondent stressed, it is "well within the special master's discretion" to determine the reasonableness of fees.  *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520-21 (Fed. Cir. 1993); *see also Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs.").  Special masters need not engage in a line-by-line analysis of petitioners' fee application.  *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).  Instead, they may rely on their experience with the Vaccine Program to determine the reasonable hourly rate and number of hours expended.  *Wasson ex rel. Wasson v. Sec'y of Dep't of Health & Human Servs.*, 24 Cl. Ct. 482, 483-85 (1991), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993).  Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests[,] . . . . Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications."  *Saxton*, 3 F.3d at 1521 (citations omitted).

Regarding the costs requested, I am concerned that petitioner's change in orthopedic experts resulted in unreasonable and redundant expert costs.  Initially, petitioner supported her claim via a report by orthopedic surgeon, Dr. Colwell.  (Ex. 12.)  During a status conference held March 31, 2020, I noted that there were competing findings regarding musculoskeletal and neurologic explanations for petitioner's injury, but that Dr. Colwell's first report had addressed only a Table injury.  I provided petitioner an opportunity to have Dr. Colwell address causation-in-fact and she filed a supplemental report by Dr. Colwell.  (ECF No. 45; Ex. 20.)  Thereafter, I permitted petitioner to file a report by a neurologist.  (ECF No. 51.)  However, at that time

---

[2] In his initial response, respondent offered no further discussion of what considerations respondent wished to see addressed in determining the reasonableness of the award.  (ECF No. 76.)  In her reply, petitioner characterized respondent's response as non-responsive boilerplate.  (ECF No. 77.)  In a much later filed supplemental response, respondent cited a prior decision by another special master (*Aycock v. Sec'y of Health & Human Servs.*, No. 19-235V, 2023 WL 8869423 (Fed. Cl. Spec. Mstr. Nov. 8, 2023)) for the proposition that, where requested expert rates are unusually high, "the Court has closely scrutinized the number of hours spent, and the qualifications of the particular expert."  (ECF No. 76, p. 3.)  However, to the extent respondent is seeking to provide notice of a supplemental authority, the *Aycock* case cited by respondent ultimately concluded that the same expert rate billed in this case was appropriate, albeit based on evidence not included within the record of this case.  *Aycock*, 2023 WL 8869423, at *7-10.  Otherwise, if the outcome of the instant motion were different, respondent's resort to a belated sur-reply to present this issue for the first time would raise questions of fundamental fairness under the vaccine rules that would need to be addressed.  (*See* Vaccine Rule 3(b)(2); Vaccine Rule 8; Vaccine Rule 13(a)(3).)

petitioner additionally filed an expert report by a second orthopedic surgeon, Dr. Srikumaran.  (Ex. 26.)  Petitioner represented that she felt further rebuttal to respondent's orthopedic expert was necessary and that Dr. Srikumaran had greater specialization regarding shoulder injuries.  (ECF No. 53.)  At the time petitioner sought Dr. Srikumaran's report, she had already provided a complete orthopedic opinion by a qualified orthopedist spanning three prior reports.  (Exs. 12, 15, 20.)  She was under order to file a report by a neurologist – which she did also do – not a second orthopedist.  If petitioner felt an additional response to respondent's orthopedist was necessary, Dr. Colwell was already well familiar with the record of this case.  In contrast, Dr. Srikumaran billed six hours reviewing the facts of this case.  (ECF No. 75-2, p. 12.)  This review was totally unnecessary given Dr. Colwell's involvement in the case and the hours spent on that review will not be compensated.[3]  This reduces the requested costs from $22,800.79 to $16,800.79.

Otherwise, I am satisfied that the overall expert costs are reasonable given the experts' qualifications, the ultimate work product, and the efficiency with which the reports were produced.  I have also reviewed counsel's billing records in this case and find that petitioner's request for fees is largely reasonable given the nature of the case, counsel's performance, and the specific procedural history of the case.  Additionally, my review confirms that the attorney hourly rates are consistent with what has previously been awarded to counsel.

---

[3] "The question is not whether [the expert] expended the numbers of hours claimed, but whether it was necessary or reasonable for him to do so."  *Baker v. Sec'y of Health & Human Servs.*, No. 99-653V, 2005 WL 6122529, at *4 (Fed. Cl. June 21, 2005) (alteration in original) (quoting *Wasson ex el. Wasson v. Sec'y of Health & Human Servs.*, No. 90-208V,1991 WL 135015, at *3 (Fed. Cl. Spec. Mstr. July 5, 1991), *remanded in part*, 24. Cl. Ct. 482, 483 (1991), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993)).  Obviously, the hours at issue were necessary in the limited sense that Dr. Srikumaran needed to review the records if he was to opine.  Thus, the fault does not lie with Dr. Srikumaran himself but with counsel's introduction of a second expert at all.  Counsel have an obligation to monitor expert fees and costs.  *Simon v. Sec'y of Health & Human Servs.*, No. 05-941V, 2008 WL 623833, at *2 (Fed. Cl. Spec. Mstr. Feb. 21, 2008).  For example, "[o]ne test of the 'reasonableness' of a fee or cost item is whether a hypothetical petitioner, who had to use his own resources to pay his attorney for Vaccine Act representation, would be willing to pay for such expenditure."  *Hardy v. Sec'y of Health & Human Servs.*, No. 08-108V, 2016 WL 4729530, at *1 (Fed. Cl. Spec. Mstr. Aug. 16, 2016) (citing *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319818, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009), *aff'd in unpublished decision*, 106 Fed. Cl. 600 (2009), *aff'd*, 406 Fed. App'x 479 (2011); *Sabella v. Sec'y of Health & Human Servs.*, No. 02-1627, 2008 WL 4426040, at *28 (Fed. Cl. Spec. Mstr. Aug. 29, 2008), *rev'd on other grounds*, 86 Fed. Cl. 201 (2009)).  While not dispositive, that framing highlights that the subjective decision to switch experts midstream, whatever the strategic underpinning, comes with associated costs that are not necessarily reasonably chargeable to the Program.  The Federal Circuit has ruled that "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."  *Saxton*, 3 F.3d at 1521 (emphasis omitted) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)).  To the extent Dr. Srikumaran did take a different tack than Dr. Colwell, it should also be noted that Dr. Srikumaran's alternative approach was ultimately not found to be persuasive.  In particular, the decision dismissing this case noted that "Dr. Srikumaran stands alone among four other experts and three specialist treaters in preferring to invoke *both* shoulder and cervical pathology to explain petitioner's symptoms." (ECF No. 72, p. 31 (emphasis original).)  However, "Dr. Srikumaran's opinion is fundamentally based on the premise that petitioner first suffered a distinct shoulder injury and only later suffered her cervical injury . . . this is not preponderantly established by the medical record evidence." (*Id.*)

Accordingly, for the reasons discussed above, petitioner's motion is **GRANTED** and attorneys' fees and costs are awarded in the reduced amount of $91,162.29, which includes $74,361.50 for attorneys' fees and $16,800.79 for attorneys' costs.

**I award the total of $91,162.29 as a lump sum in the form of a check jointly payable to petitioner and petitioner's counsel Leah V. Durant, Esq.**

The clerk of the court shall enter judgment in accordance herewith.[4]

**IT IS SO ORDERED.**

<u>**s/Daniel T. Horner**</u>
Daniel T. Horner
Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.